UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-14041-CR-MIDDLEBROOKS/MATTHEWMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEWITT FERGUSON,

    Defendant.

_____/

FILED by _____ D.C.

MAY 2 2 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER REQUIRING THE INVOLUNTARY MEDICATION OF DEFENDANT IN ORDER TO RESTORE COMPETENCY [DE 253]

This cause is before the Court upon the Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant [DE 253], pursuant to Title 18 United States Code, Section 4241 and *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). This Motion was referred to the undersigned by United States District Judge Donald M. Middlebrooks. [DE 250]. Defendant has been charged with violating the terms of his supervised release. [DE 227]. He is in the custody of the Bureau of Prisons, specifically the Federal Medical Center at Butner, North Carolina (FMC Butner), pending his supervised release revocation hearing. Defendant is suffering from mental illness, and has been since he was brought into custody over a year ago. Defendant is mentally incompetent to participate in his revocation hearing and needs antipsychotic medication, which he has refused. For the reasons that follow, this Court authorizes the medical staff at FMC Butner to administer antipsychotic medication to Defendant without his consent for the purpose of restoring his competency.

1

## I. __BACKGROUND__

In 2004, Defendant was convicted of conspiracy in connection with the acquisition of firearms from a licensed firearms dealer, in violation of 18 U.S.C. § 371, making false statements/representations to firearms dealer in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On January 4, 2005, United States District Judge Donald M. Middlebrooks sentenced Defendant to 180 months in prison followed by three years of supervised release.

According to mental health records from the Bureau of Prisons Electronic Medical Record, it appears that Defendant began to display symptoms of a paranoid thought disorder along with increasing hostility and aggression in 2005, while incarcerated at the Federal Correctional Institution at Coleman ("FCI Coleman"). [DE 242, pg. 3]. Defendant was transferred to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri on April 10, 2006 for treatment. *Id.* Defendant was subsequently diagnosed with schizophrenia. *Id.* He was involuntarily medicated with anti-psychotic medication (Haldol) on September 29, 2006, and his presentation, hygiene, and speech substantially improved. *Id.*

Between September, 2006 and June, 2017, Defendant was transferred seven times between federal correctional institutions and federal medical centers due to his intermittent compliance with mental health treatment and anti-psychotic medication. *Id.* When compliant with his medication, Defendant was described as stable and cooperative, but when he was not compliant with his medication, he rapidly deteriorated and exhibited odd, unpredictable, and aggressive behaviors. [DE 242, pg. 4]. On December 23, 2013, Defendant was transferred to the Federal Medical Center in Devens, Massachusetts ("FMC Devens") for mental health treatment,

where he remained for the duration of his incarceration. *Id.* Records show that attempts were made to engage Defendant in treatment upon his release, but he consistently refused to sign consent forms adding a mental health requirement to the terms and conditions of his supervised release. *Id.* Defendant was discharged from FMC Devens on June 15, 2017. *Id.*

Defendant's term of supervised release commenced on June 15, 2017. On June 28, 2017, less than two weeks after his release from custody, Defendant was charged with four violations of his supervised release pursuant to a Petition for Warrant or Summons for Offender under Supervision. [DE 227]. Specifically, the Petition alleges that Defendant failed to report to the probation office within 72 hours of his release; failed to report to the probation office as directed; and failed to follow the instructions of the probation officer. *Id.*

The Court issued a warrant for Defendant's arrest [DE 228] and he first appeared before this Court on July 21, 2017. [DE 230]. At Defendant's initial appearance, the Court noticed that Defendant displayed bizarre behavior in Court and appeared angry, agitated, and aggressive. [DE 231]. Defendant refused to be placed under oath and did not speak in complete sentences. *Id.* The Court also noted that the probation officer's Memorandum reflected that Defendant's family members believe he has a mental illness and may be violent. *Id.* The Government made an *ore tenus* motion for Defendant to undergo a competency examination. *Id.* Upon the Government's motion, the Court's own observations, and the information contained in the U.S. Probation Offices' Memorandum to the Court, the Court entered an order requiring that Defendant undergo a competency evaluation and requiring that Defendant be committed to the custody and care of the Attorney General for placement in a suitable facility. *Id.*

## II. THE COMPETENCY EVALUATION AND HEARING

Pursuant to the Court's Order [DE 231], Dr. Judith Campbell, Ph.D., a forensic psychologist with the Federal Medical Center in Lexington, Kentucky, issued a forensic report detailing the competency evaluation she conducted on Defendant. [DE 242]. Dr. Campbell advised that Defendant continued to suffer from schizophrenia and that it was highly likely that Defendant would continue to have difficulty working with his attorney until he is properly medicated. [DE 242, pg. 7]. She opined that Defendant was not competent to proceed to trial or make other decisions regarding his legal case. *Id.* On November 21, 2017, the Court held a competency hearing. [DE 245]. At the hearing, Defendant had to be removed from the courtroom. *Id.* The Court carefully reviewed and adopted Dr. Campbell's forensic report at the hearing and the Court found by a preponderance of the evidence that Defendant was incompetent as defined by 18 U.S.C. §4241(a). *Id.* The Court ordered that Defendant be hospitalized for treatment for a reasonable period of time, not to exceed four months, for the purpose of restoring Defendant's competency. *Id.*

Defendant was transported to FMC Butner on December 21, 2017, and he has remained there since that time. Defendant was evaluated by the staff at Butner for five months. A report dated March 6, 2018, and signed March 20, 2018 was authored by evaluator Evan Du Bois, Psy.D., a forensic psychologist. [DE 249]. Dr. Du Bois opined that Defendant suffers from schizophrenia. Dr. Du Bois opined that Defendant remained incompetent to proceed to trial and that competency is likely to be restored with adherence to a medication regimen. *Id.* An addendum and appendix, dated and signed April 19, 2018, was authored by evaluator Logan Graddy, M.D., a psychiatrist. [DE 252]. Drs. Du Bois and Graddy discussed their findings in their reports within the framework of the issues set forth in *Sell*. The reports were admitted into

4

evidence at the subsequent May 21, 2018 *Sell* hearing under seal. [Government's Exhibits 1 and 2].

## III. **THE MAY 21, 2018 *SELL* HEARING**

The Government filed its Motion for an Order Requiring the Involuntary Treatment of the Defendant in Order to Restore Competency on May 2, 2018. [DE 253]. On May 21, 2018, the Court held an evidentiary hearing on the Motion. Defendant appeared via video conference, but he had to be removed from the conference because he was unable to control himself sufficiently to sit through the hearing. Specifically, Defendant was incoherent, babbling, and cursing loudly. The Court could not conduct a hearing with Defendant present on the video conference as he yelled and interrupted the Court, counsel, and the witnesses during the hearing. Defendant's counsel agreed that Defendant had to be removed from the video conference to complete the hearing. Defendant did not testify at the hearing and appeared wholly unable to do so due to his severe mental condition.

Drs. Du Bois and Graddy testified via video conference. Dr. Du Bois was recognized as an expert in clinical and forensic psychology. Dr. Graddy was recognized as an expert in forensic psychiatry. Dr. Du Bois testified that Defendant's condition has remained stagnant and has possibly worsened over the past five months. He testified that he believed medication will aid Defendant in obtaining competency and will likely allow Defendant to sit rationally through court proceedings.

Dr. Graddy testified that his proposed course of treatment would be the administration every two weeks of risperidone 50mg via intramuscular injection. He stated that he believes this treatment will be effective because Defendant has previously tolerated this medication and improved in the past, and this medication will likely allow Defendant to obtain competency. He

also testified that he considered the side effects of this treatment and he believes that the side effects are very unlikely to interfere with Defendant's ability to assist his counsel. Dr. Graddy testified that he did not believe there are any effective alternative treatments, and that injections are necessary because Defendant will not comply with the oral administration of medication. Finally, Dr. Graddy testified that the dosage, frequency, and route of administration of the medication are within the standard of care for the treatment of schizophrenia.

## IV. <u>ANALYSIS</u>

In *Sell v. United States*, the Supreme Court held that under limited circumstances the Fifth Amendment Due Process Clause permits the Government to administer medication to a defendant, against his will, to restore him to competency. For this to happen, the court must find the following: (1) the Government has important interests in adjudicating the defendant; (2) involuntary medication would significantly further those interests; (3) involuntary medication is necessary to further the Government's interests; and (4) it is medically appropriate, *i.e.*, it is in the defendant's best medical interest given his medical condition. *Sell*, 539 U.S. at 180-81. The Government bears the burden of proving the necessary factual findings by clear and convincing evidence. *U.S. v. Diaz*, 630 F.3d 1314, 1331-32 (11th Cir. 2011).

The Supreme Court directed that before the Court addresses these issues, it should first consider whether the Government may involuntarily medicate the defendant for other reasons. Specifically, a court should ordinarily determine whether the Government seeks, or has first sought, permission for forced administration of drugs on the grounds set forth in *Harper*; and, if not, why not. *Sell*, 539 U.S. at 183. In *Harper*, the U.S. Supreme Court held that an inmate with a "serious mental illness" may be treated "with antipsychotic drugs against his will, if the inmate is

dangerous to himself or others [while confined] and the treatment is in the inmate's medical interest." *Harper,* 494 U.S. at 227.

In Dr. Graddy's addendum and appendix [Government's Exhibit 2], Dr. Grady noted that Defendant was able to function adequately in the Mental Health Department without engaging in behavior that posed a risk of being dangerous to himself or others, and therefore he did not meet the criteria for involuntary treatment under the grounds of *Harper* at that time. *Id.* at pg. 3. However, due to Defendant's recent aggressive behavior and the risk of further explosive behavior, Dr. Graddy has initiated proceedings to medicate Defendant under the grounds set forth by *Harper.* However, the Court notes that the procedure under *Harper* is lengthy and it would significantly delay the treatment of Defendant. Therefore, proceeding under the *Sell* factors is necessary and appropriate in this case due to Defendant's severe schizophrenia and the necessity that he be treated promptly.

## A. **Important Governmental Interests**

The Defendant is charged with violating his supervised release, which carries a maximum term of imprisonment of five years, and a term of supervised release of up to five years. *Sell* applies to supervised release revocation proceedings. *United States v Rodriguez,* 281 F.Supp.3d 1284, 1293 (S.D. Fla. 2017) The Court also notes that the underlying convictions are serious crimes, both as indicated by the Defendant's prior sentence as an Armed Career Criminal under 18 U.S.C. § 924(e), as well as by the fact that the convictions involved firearms.

### 1. Serious Crime

"The Government's interest in bringing to trial an individual accused of a serious crime is important." *Sell,* 539 U.S. at 180. The Supreme Court recognized the Government's role in prosecuting serious crimes "to protect through application of the criminal law the basic human

need for security." *Id.* (citation omitted). In considering whether an offense is "serious," the best objective measure is the maximum penalty authorized by statute, which is the standard used by the Second, Fourth, Fifth, Sixth and Eighth Circuits. *Rodriguez,* 281 F.Supp.3d at 1293-94 (citing *United States v. Mackey,* 717 F.3d 569, 573 (8th Cir. 2013) ("we agree with those circuits that place the greatest weight on the maximum penalty authorized by statute"); *United States v. Gutierrez,* 704 F.3d 442, 451 (5th Cir. 2015) ("we follow the approach of several other circuits in comparing the time already served by [defendant] with the statutory maximum authorized for his indicted offenses"); *United States v. Green,* 532 F.3d 538, 550 (6th Cir. 2008) ("we conclude that a district court may rely on the potential statutory penalty to determine whether the crime meets the 'serious' requirement"); *United States v. Evans,* 404 F.3d 227, 237 (4th Cir. 2005) ("it is appropriate to focus on the maximum penalty authorized by statute in determining if a crime is 'serious'"); *United States v. Gomes,* 387 F.3d 157, 160-61 (2nd Cir. 2004)). As those courts noted, the statutory maximum penalty provides an objective measure that avoids arbitrary application and "respects legislative judgments regarding the severity of the crime." *Evans,* 404 F.3d at 237; *see also Green,* 532 F.3d at 549.

The Court finds that the violation with which Defendant is charged is indeed a serious crime. If he is found guilty of the charged violations of his supervised release, the Court will be authorized by statute to sentence Defendant to up to five years in prison, and to an additional term of up to five years of supervised release. The underlying convictions are also serious crimes which involved firearms, and for which Defendant was sentenced to 180 months imprisonment. Further, the Probation Office has the important task of monitoring Defendant in an effort to ensure that he does not present a threat to others. Complying with the terms of his supervised release is critical to this effort. Plainly, the Government has a compelling interest in restoring

Defendant to mental competency so that it can then adjudicate him on the pending charges and have the Court resume its supervision of Defendant.

    2. Special Circumstances

A court must also consider the facts of the individual case in evaluating the Government's interest in prosecution. *Sell,* 539 U.S. at 180. The Government's interest may be diminished under special circumstances, such as the possibility of civil commitment amounting to lengthy confinement which could "diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime" or "the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed ... )." *Id.* The Court finds that there are no special circumstances at issue in this case and therefore the Government's interest in bringing Defendant to his supervised release revocation hearing is not undermined.

## B. **Significant Furtherance of the Government Interest**

The second *Sell* factor requires the Court to determine whether involuntary medication will "significantly further" the Government's important interests. This factor is satisfied if the medication is (1) "substantially likely to render the defendant competent to stand trial", and (2) "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." 539 U.S. at 181. The Government, relying on the reports and testimony of Drs. Du Bois and Graddy, has established the second *Sell* factor by clear and convincing evidence.

At the hearing, both Drs. Du Bois and Graddy testified that treatment pursuant to the proposed treatment plan would be substantially likely to allow Defendant to obtain competency. Defendant has been diagnosed with schizophrenia. Dr. Graddy testified that his proposed course

9

of treatment would be the administration every two weeks of risperidone 50mg via intramuscular injection. Dr. Graddy testified that his prognosis of Defendant is good, if Defendant submits to this course of treatment. Dr. Du Bois also testified that he believed medication would allow Defendant to obtain competency. Both doctors testified that Defendant's medical records showed that Defendant's condition improved when he was medicated in the past. The evaluators' testimony regarding their findings is consistent with the opinions expressed in their reports. The Eleventh Circuit Court of Appeals has found that expert testimony from a treating forensic psychologist and psychiatrist, supported by statistical studies, "strongly demonstrate[d] a finding that the second *Sell* factor had been established." *United States v. Diaz*, 630 F.3d 1314, 1332 (11th Cir. 2011); *see also United States v. Ruark*, 611 Fed. Appx. 591, 598 (11th Cir. 2015).

Based on the doctors' opinions on the subject, the Government has proven by clear and convincing evidence that antipsychotic medication is substantially likely to restore Defendant's competency to proceed. *See United States v. Gillis*, No. 3:11-CR-18-J-34JBT, 2011 WL 7109362, at \*7 (M.D. Fla. Nov. 30, 2011), report and recommendation adopted as modified, No. 3:11-CR-18-J-34-JBT, 2012 WL 254019 (M.D. Fla. Jan. 27, 2012); *See United States v. Gomes,* 387 F.3d 157, 161–62 (2d Cir.2004) (affirming the district court's conclusion that there was a substantial likelihood of restoration of competency through medication when "doctors noted a 'substantial probability' that anti-psychotic medication would render [the defendant] competent," and the district court cited a seventy percent success rate in restoring defendants' competence to proceed).

As to the second finding, Dr. Graddy testified at length that treatment with the proposed antipsychotics would be substantially unlikely to cause side effects that would significantly interfere with Defendant's ability to assist his attorney in these proceedings. Dr. Graddy's

appendix explains the possible side effects of antipsychotic medication. [Government's Exhibit 2, pgs. 9-12]. Dr. Graddy testified that there is a possibility for neuromuscular and metabolic side effects, but that Defendant would be monitored for all of these side effects. [Government's Exhibit 2, pg. 11]. Further, medical staff would attempt to avoid side effects by use of the lowest effective dose. *Id.* The Court accepts Dr. Graddy's testimony and the opinions included in his addendum and appendix [Government's Exhibit 2], and finds that the Government has proven by clear and convincing evidence that the proposed treatment plan is substantially unlikely to have side effects that will significantly interfere with Defendant's ability to assist his counsel.

## C. **Necessary to Further the Government Interest**

The Court must next decide whether involuntary medication is necessary to further the Government's interests. The Court can authorize involuntary medication only if it first finds that there are no less intrusive treatments that are likely to achieve substantially the same result. *Sell*, 539 U.S. at 181. Both Drs. DuBois and Graddy testified that there is no alternative course of treatment available to assist Defendant in regaining competency. Indeed, both Drs. DuBois and Graddy testified that during the period of time that Defendant has been committed to the Federal Medical Center at Butner, North Carolina, his condition has at best remained the same (which was poor when he arrived), and at worst has deteriorated. Both Drs. Du Bois and Graddy testified that treatment with antipsychotic medication is necessary to restore Defendant to mental competency. The doctors were clear that there are no less intrusive treatments that are likely to achieve competency, given Defendant's refusal to comply with medication and to take medication orally. Dr. Graddy noted in his Appendix that antipsychotic medication is an "essential element in the treatment" of schizophrenia, and explained:

> There is no convincing evidence in the published literature that patients with chronic schizophrenia or related psychotic disorders

11

significantly respond to psychotherapy alone compared to the response to treatment with antipsychotic medication augmented with psychosocial interventions. Most proponents of cognitive behaviorally oriented psychotherapy for schizophrenia acknowledge the biological basis of the disorder and actively promote medication compliance.

[Government's Exhibit 2, pg. 8]. Accordingly, the Government has proven by clear and convincing evidence that the administration of antipsychotic medication is necessary to further the Government's interest in this case.

## D. Medically Appropriate in Light of Patient's Medical Circumstances

Last, the Court must conclude that the medication is "medically appropriate, *i.e.,* in the patient's best medical interest in light of his medical condition." *Sell*, 539 U.S. at 181. Drs. Du Bois and Graddy testified at the hearing that the administration of antipsychotic medication to Defendant, in accord with the proposed treatment plan, is medically appropriate. Dr. Graddy testified that the dosage, frequency, and route of administration are within the standard of care for the treatment of schizophrenia. The Court determines that the medication and treatment regimen will give Defendant the best chance of being restored to competency. Furthermore, the treatment protocol outlined in the appendix to Dr. Graddy's report, [Government's Exhibit 2], details the various courses of action available should any adverse effects be detected. Dr. Graddy also emphasized that any negative effects of the medication should be easily detected, and the staff at FMC Butner are well-equipped to treat those side effects quickly. Having considered these factors, the Court finds that the Government has met its burden of showing by clear and convincing evidence that involuntary medication is appropriate.

## V. CONCLUSION

In light of the foregoing, the Court concludes that the Government has established by clear and convincing evidence that Defendant should be treated with antipsychotic medication,

without his consent, for the purpose of restoring him to competency. The Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant [DE 253], pursuant to Title 18 United States Code, Section 4241 and *Sell v. United States,* 539 U.S. 166 (2003) is **GRANTED** as follows:

1. The Defendant, Dewitt Ferguson, is hereby committed to the custody of the Attorney General for an additional period of four months, under 18 U.S.C. § 4241.

2. During that time period, Defendant shall be involuntarily medicated pursuant to the treatment regimen prescribed by Dr. Graddy. Dr. Graddy may amend the proposed treatment course as he deems necessary in his expert medical psychiatric opinion to treat Defendant's schizophrenia, but he shall update the Court and the parties if such change in treatment occurs.

3. The staff at FMC Butner shall provide status reports to the Court every thirty days regarding Defendant's treatment and status.

4. Upon the completion of the final evaluation and receipt of the final report from FMC Butner, a hearing shall be scheduled to determine competency and further pretrial proceedings.

5. If Defendant is restored to competency prior to the expiration of the four-month term set above, he shall remain at FMC Butner and not be transported to the Southern District of Florida unless a competency hearing has been scheduled by the Court. This is to ensure that he keeps receiving all necessary medications and mental health treatment.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the

Southern District of Florida, this 22 day of May, 2018.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE